# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-41349

United States Court of Appeals
Fifth Circuit

**FILED**
August 28, 2015

Lyle W. Cayce
Clerk

ROLANDO PEREZ; MIRIAM PEREZ,

Plaintiffs - Appellants

v.

DOCTORS HOSPITAL AT RENAISSANCE, LIMITED,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:13-CV-124

Before WIENER, CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Plaintiffs Rolando and Miriam Perez brought claims against defendant Doctors Hospital at Renaissance, Limited, pursuant to Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Chapter 121 of the Texas Human Resources Code. The district court granted summary judgment to DHR on all claims. We REVERSE the judgment and REMAND for further proceedings.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-41349

## FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2011, the plaintiffs took their four-month-old daughter to the emergency room at Doctors Hospital at Renaissance ("DHR"), located in Edinburg, Texas. Their daughter was diagnosed with a brain tumor that required monthly treatment at DHR. Mrs. Perez is completely deaf and communicates exclusively in American Sign Language ("ASL"). Her ability to read and write is limited. Mr. Perez is completely deaf in his right ear and cannot hear well in his left ear. His primary language is ASL and he reads and writes in English only with difficulty. DHR has known the plaintiffs required auxiliary services during their hospital visits since at least January 2011.

The plaintiffs allege that throughout 2011 and part of 2012, DHR repeatedly failed to provide them an interpreter. On the occasions DHR did provide them an interpreter, the plaintiffs allege they would sometimes have to wait "upwards of a full day" for the interpreter to arrive. The plaintiffs' daughter's first round of chemotherapy ended in January 2013. The plaintiffs do not allege that there were any problems with DHR's provision of auxiliary services for the time period of 2013 through early 2014. In April 2014, the plaintiffs' daughter was diagnosed a second time with cancer and ordered to undergo chemotherapy over an 80-week period. The plaintiffs allege that after this second diagnosis they again experienced problems with DHR's auxiliary services. They allege that an interpreter was not always provided. Furthermore, the video remote imaging ("VRI") machines, which DHR began to offer to the plaintiffs in late 2013, did not always function properly. They also allege that DHR's medical staff was, at times, unable to operate the machines and that some nurses did not understand or know about VRI.

The plaintiffs filed suit against DHR in March 2013. In June 2014, DHR

2

No. 14-41349

moved for partial summary judgment on the plaintiffs' federal claims.  In July, the district court held a hearing on the motion and granted summary judgment to DHR on the plaintiffs' Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims.  In August, DHR moved for summary judgment on the plaintiffs' state-law claims, which the district court granted. The plaintiffs timely appealed.

## DISCUSSION

"We review a district court's ruling on a motion for summary judgment *de novo* and apply the same legal standards as the district court." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).  Summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## I.    *Title III of the Americans with Disabilities Act*

Title III of the ADA provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a).  A hospital is a public accommodation under Title III of the ADA.  *See id.* § 12181(7)(F).  Damages are not available for a Title III ADA claim brought by a private party, but a private party may seek injunctive relief.  *See id.* § 12188(a); *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997).

Standing to seek injunctive relief requires plaintiffs to show that they suffer or will suffer an injury-in-fact, and therefore would benefit from the

court's granting of such equitable relief. *Id.* Plaintiffs must demonstrate that they face a palpable present or future harm, not harm that is "conjectural or hypothetical." *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 n.23 (5th Cir. 1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Allegations of "past wrongs" alone do not "amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 563 (quoting *Lyons*, 461 U.S. at 103) (alteration omitted). Past wrongs can be considered, however, as evidence of an actual threat of repeated injury. *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir. 1992) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

At the summary judgment hearing on the plaintiffs' ADA claim, the district court found that "Mr. Perez had no complaint about the accommodations that were being made to [him] and his family by the Hospital after December of 2011." Therefore, the court stated, it "seemed to be clear from the evidence" that there was no "real and immediate threat of future harm." On the same day as the hearing, the court issued a one-page order granting summary judgment to DHR. The court referred to the reasons it stated in open court at the motion's hearing as explanation for its judgment. In the transcript from the hearing, the district court did not explicitly refer to standing. It is clear, though, that the court dismissed based on the lack of a real and immediate threat of future harm. That issue is part of the analysis for standing. Furthermore, both DHR's motion for summary judgment and the plaintiffs' response focused on standing as to the ADA claim.

The plaintiffs argue on appeal that there were genuine disputes of material fact as to whether there is a real threat of future harm. They refer to "overwhelming evidence of DHR's repeated and recent failures to provide effective communication through auxiliary aids or reasonably accommodate

4

the Perez family's hearing disabilities." Included in the evidence is Mr. Perez's affidavit. He swore that during his family's visits to DHR in the three-month period prior to the court's summary judgment ruling, they encountered: (1) VRI machines that did not always work properly; (2) a nurse who did not know how to use the VRI machine; and (3) two nurses who "did not know what 'VRI' was." Mr. Perez also stated that he always "prefer[s] an in-person interpreter, but DHR does not always have one available, even after we have requested it."

Also introduced were Mr. Perez's handwritten notes describing the family's visits to DHR. The notes indicate that an interpreter was requested and not provided as late as April 2012. Moreover, Norma Teran, DHR's executive vice president for nursing, testified in her June 2014 deposition that DHR's ADA compliance policy for the hearing impaired was in need of revision. Teran also testified that she was unable to find any training sessions that had taken place at DHR related to addressing the needs of the hearing impaired.

DHR acknowledges that Mr. Perez asserts in his affidavit that the plaintiffs have recently experienced problems. DHR contends, though, that Mr. Perez does not state that DHR refused to provide a VRI machine or interpreter when requested, that DHR was unable to get the VRI machine to work on any occasion, or that the nurse unfamiliar with how to use the VRI machine did not ultimately figure out how to use it or enlist the aid of someone familiar with the machine. DHR argues that "in light of the Perezes visiting DHR numerous times in the last three years without incident, the Perezes' minor VRI complications are insufficient to create an inference that they face a substantial risk of future harm."

In analyzing the propriety of summary judgment, "we consider all the facts contained in the summary judgment record and the inferences to be drawn therefrom in the light most favorable to the non-moving party." *Duarte*

*v. City of Lewisville*, 759 F.3d 514, 517 (5th Cir. 2014) (citation and internal quotation marks omitted). We conclude that the district court erred in holding there was no genuine dispute of material fact as to whether the plaintiffs faced a real and immediate threat of future harm. Mr. Perez's affidavit is evidence that the plaintiffs have experienced recent problems with DHR's provision of auxiliary services. Furthermore, the evidence of DHR's failure to revise its ADA compliance policy, which it admits needs revision, and its lack of training on addressing the needs of the hearing impaired, creates a possible inference that the plaintiffs' problems with the provision of auxiliary services will continue in the future.

Because we conclude there is a genuine dispute of material fact on the question whether the plaintiffs have standing to bring their ADA claim, we reverse the district court's grant of summary judgment on that claim.[1]

## II. *Section 504 of the Rehabilitation Act*

The RA protects the disabled who seek to participate in a program or activity receiving federal funds from discrimination: no otherwise qualified individual "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To receive compensatory damages under the RA, a plaintiff must offer proof of intentional discrimination. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

---

[1] The plaintiffs also appear to argue that the district court should have addressed the merits of their ADA claim. In their response to DHR's motion for partial summary judgment, the plaintiffs' only argument on the ADA claim was that they had standing to bring the claim because there was a real and immediate threat of future harm. They did not raise any argument as to the merits of their ADA claim. They may not raise that issue now. *See Brazos Valley Coal. for Life, Inc. v. City of Bryan*, 421 F.3d 314, 321 n.7 (5th Cir. 2005).

We did not define what we meant by intent in *Delano-Pyle*. Some circuits have held that deliberate indifference suffices. *See Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012). The parties have not briefed the issue in any depth, and we decline to make new law on the nature of intent at this time. We conclude that on the present record, there is enough to show a dispute of material fact on whether DHR intentionally, i.e. purposefully, discriminated. Intent is usually shown only by inferences. *See Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000). Inferences are for a fact-finder and we are not that. *See id.* Still, we conclude that actual intent *could* be inferred from the evidence before us.

At the summary judgment hearing, the district court stated that there was no evidence of intentional discrimination. The court held the DHR "did whatever [it] could to provide effective communication." The plaintiffs argue that the district court failed to view the facts in the light most favorable to them as the non-movants. They rely on Mr. Perez's handwritten notes on his daughter's medical records that document at least 18 dates on which an interpreter was not provided. Also, in Mr. Perez's deposition, he testified that when he asked one nurse for an interpreter, she told him one would be provided "[o]nly when the doctor shows up or if there's any questions you need help or concerns, then you can ask." Mrs. Perez also testified in her deposition that when she requested an interpreter, sometimes the "nurses would say no. They would say that the boss said no." Furthermore, Teran testified that DHR's policies as to the hearing impaired were "certainly" in need of revision, and had not been revised since May 2012, and that DHR did not provide any training on addressing the needs of the hearing impaired.

Our review of the evidence is through the summary judgment lens. "The evidence of the non-movant is to be believed, and all justifiable inferences are

No. 14-41349

to be drawn in his favor." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (internal quotation marks omitted).  In examining the evidence, we are guided by a case in which a plaintiff driver, who was severely hearing impaired, was involved in a car accident.  *See Delano-Pyle*, 302 F.3d at 570.  When a police officer arrived, the driver informed him of his hearing disability.  *Id.*  The officer nonetheless performed several sobriety tests on the driver without asking which form of communication would be effective.  *Id.*  The driver sued for violations of the ADA, the RA, and Chapter 121 of the Texas Human Resources Code.  *Id.* at 571.  A jury found the county liable, and the county appealed.  *Id.*  On appeal, on plain error review, we held that "[t]he facts addressed at trial support the jury's finding of intentional discrimination."  *Id.* at 573, 575.  We deemed it important that "no matter how many times [the officer] repeated himself and no matter how loudly he spoke, [the driver] could not understand most of what he was saying," yet the officer did not "try[] a more effective form of communication."  *Id.* at 575.

We acknowledge the alleged RA violation here and in *Delano-Pyle* occurred in different contexts.  Still, the evidence in each case could be seen as suggesting that the defendant's agents ignored clear indications that they were dealing with a hearing-impaired person with special communication needs.

The summary judgment evidence is sufficient to create a genuine dispute as to whether DHR intentionally discriminated against the plaintiffs.  There is evidence indicating that on several occasions, an interpreter was requested but not provided.  There is also evidence indicating that one of the forms of communication that DHR was utilizing, the VRI machines, was often ineffective.  In *Delano-Pyle*, the plaintiff did not show he ever requested an

8

interpreter or auxiliary aid, yet we concluded that the failure to provide an effective form of communication was evidence of intentional discrimination. Here, some evidence indicates that the plaintiffs made repeated requests for auxiliary aids, yet DHR failed on several occasions to provide effective aids and in some instances refused to provide an interpreter after one had been requested.

We conclude that, even without applying a deliberate indifference standard, there is a genuine dispute of material fact as to whether DHR intentionally discriminated against the plaintiffs. Accordingly, the district court's dismissal of the plaintiffs' RA claim was error. On remand, the district court may, if necessary to resolve the case, make the initial effort to define intent under this statutory scheme.

## III.    *Chapter 121 of the Texas Human Resources Code*

The district court granted DHR's second motion for summary judgment after noting in its order that the parties did not dispute that Chapter 121 is analogous to the RA. The court found there was no "genuine issue of material fact on whether the steps taken by DHR to provide auxiliary aids and services to Plaintiffs demonstrate an intent to discriminate against Plaintiffs because of their disability." Because we hold that the plaintiffs have demonstrated that a factual dispute exists on the question of intentional discrimination, we reverse the district court's grant of summary judgment to DHR on the plaintiffs' Chapter 121 claims.

## IV.    *Declaratory Relief*

The plaintiffs argue that it was error for the district court to dismiss their claims because they specifically requested declaratory relief in their

9

complaint. DHR responds that the plaintiffs only requested declaratory relief on their ADA claim, and that declaratory relief is not available when there is no risk of future harm. The district court did not address the issue of declaratory relief in either of its summary judgment orders or at the summary judgment hearing. We leave the question of declaratory relief for the district court to consider in the first instance on remand.

* * *

We REVERSE the district court's dismissal of the plaintiffs' claims and REMAND for further proceedings consistent with this opinion.