HAYNES, Circuit Judge:
Mitchell Miraglia sued the Board of Supervisors of the Louisiana State Museum and Deputy Assistant Secretary Robert Wheat-whom, for ease, we collectively call the Museum-for discrimination under the Americans with Disabilities Act and the Rehabilitation Act. He sought equitable relief as well as damages. After trial, the district court dismissed Miraglia's equitable *570 claims as moot, awarded him monetary damages, and granted attorneys' fees. Miraglia appeals the dismissal of his equitable claims. The Museum appeals the district court's award of damages and attorneys' fees. We now DISMISS AS MOOT Miraglia's appeal. As for the Museum's appeal, we AFFIRM IN PART and REVERSE AND RENDER IN PART. Miraglia failed to prove a necessary element for monetary damages, so we reverse and render judgment on that claim in favor of the Museum. He is still a prevailing party, however, and thus we affirm the district court's grant of attorneys' fees.
I. Background
This lawsuit centers on Miraglia's visit to the Lower Pontalba Building in the French Quarter of New Orleans. The Lower Pontalba Building is a historic building listed on the National Register of Historic Places and is owned by the Louisiana State Museum. The Museum's purpose in operating the Lower Pontalba Building is to "maintain [its] structure and historic nature" so that "future generations" can learn about life in the 1850s; thus, the Lower Pontalba Building's original construction and French doors are preserved by the Museum. However, the Museum also uses the Lower Pontalba Building to generate revenue to support the Museum's activities by renting space in the Lower Pontalba Building to retail tenants.
Miraglia is a quadriplegic afflicted with cerebral palsy who depends on a motorized wheelchair for movement. In the summer of 2015, Miraglia visited the Lower Pontalba Building to browse some of its retail shops. Once he arrived at the Lower Pontalba Building, Miraglia determined he could not enter the retail stores; if only one of a store's French doors was open, the entrance was potentially too narrow and, regardless of the doors, each had a ramp that was too steep. Miraglia did not attempt to enter and left the Lower Pontalba Building.
Miraglia sued under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. Rather than sue the shop owners, Miraglia focused on the Museum, suing the Museum's Board of Supervisors, as well as the official responsible for running the day-to-day operations of the Museum, Deputy Assistant Secretary Robert Wheat. Miraglia alleged that the Museum violated § 12132 and § 794 by failing to rectify multiple architectural features that barred his entry to the Lower Pontalba Building shops. Miraglia sought declaratory and injunctive relief, monetary damages, and attorneys' fees.
The parties have not disputed that the entrances to the retail stores were inaccessible to Miraglia. The key disputed issue has been what accommodations, if any, the Museum should make. Wheat admitted that the Museum had previously done "nothing" to check for ADA compliance.
Each side retained an expert to opine on the appropriate accommodations. Miraglia's expert, Nicholas Heybeck, recommended that the Museum raise the sidewalks near shop entrances, install a doorbell system to accommodate door width, and make interior modifications to rectify other barriers. The Museum's expert, Michael Holly, concluded that Heybeck's recommendations were not reasonable accommodations because they would change the historic nature of the Lower Pontalba Building. For example, Holly found that changing a single door would alter the historical nature; that door buzzers could affect the Lower Pontalba Building's visual acceptableness; and raising the sidewalk would impact the Lower Pontalba Building's columns, which would permanently affect the historic character *571 of the Lower Pontalba Building's facade and create water intrusion. Eventually, Holly and Heybeck agreed that five-foot portable ramps for each store would suffice, even if Heybeck still believed his recommendation to raise the sidewalks was the "best engineering solution." Additionally, both experts agreed that installing buzzers that could alert employees to open the second French door leaf would reasonably accommodate the narrow door width and would not alter the Lower Pontalba Building's historic nature.
After nearly two years of pre-trial wrangling and unable to come to a settlement, the parties pushed toward trial.[1] Then, on the Friday before the Monday trial, the Museum purchased five five-foot portable ramps, buzzers, and buzzer-related signage. At the beginning of the bench trial, they submitted evidence of the purchase and their intent to implement the equipment to the district court. The district court then held a short bench trial.
Four days later, it issued its findings of fact and conclusions of law. The district court concluded that Miraglia's request for declaratory and injunctive relief was moot because the Museum already purchased the ramps, buzzers, and associated signage and intended to implement them.[2] Though it considered the claims moot, the district court "retain[ed] jurisdiction over [the] matter should [the Museum] default on the representations made in open court at trial." Additionally, the court awarded Miraglia $500 in damages, finding that Miraglia "feels emotional injury when his disability prevents him from partaking in offerings" that the nondisabled public enjoy. Miraglia subsequently moved for reasonable attorneys' fees and costs and expenses, which the court awarded in the amount of $30,050.35.
The Museum timely appealed the district court's award of damages and attorneys' fees. Miraglia timely appealed the district court's dismissal of his requests for declaratory and injunctive relief as moot.
II. Discussion
A. Declaratory and Injunctive Relief
We need not address whether Miraglia's equitable claims were moot at the time of trial, because the record and Miraglia's briefing indicates they are now moot. See Staley v. Harris Cty. , 485 F.3d 305, 309 (5th Cir.2007) (en banc) (dismissing a claim as moot due to events subsequent to the trial court's order).
The Museum argues in its brief, and identifies record evidence confirming, that it has installed signs and buzzers at the various storefronts in question. It has also purchased the ramps and asserted on appeal that they have been given to the storefronts. Miraglia does not contest any of this.[3]
*572 Instead, Miraglia argues that the case is not now moot because the Museum needs to be enjoined to ensure its tenants' compliance. He specifically requests that the Museum "incorporate a provision into [its] lease agreements requiring said tenants to accommodate individuals with disabilities" and "work with their tenants" to ensure compliance. But the record shows that the Museum's lease agreements already require the tenants to comply with "all state, federal, and local laws and ordinances." Miraglia asserts that the tenants are covered by Title III of the ADA, and they would thus be required by federal law to accommodate individuals who come to their stores. See 42 U.S.C. § 12182(a). Thus, as Miraglia has pressed his claim on appeal, he has not identified any additional relief that the Museum has not already implemented.
Additionally, Miraglia argues that the case is not moot because the Museum voluntarily ceased its behavior, which is an exception to mootness. But we have held that when a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance, then the voluntary cessation doctrine does not apply. See Sossamon v. Lone Star State of Tex. , 560 F.3d 316, 325 (5th Cir.2009) ("Although ... a defendant has a heavy burden to prove that the challenged conduct will not recur once the suit is dismissed as moot, government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith...."), aff'd sub nom. Sossamon v. Texas , 563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011). The Museum has provided such assurances, and we have no reason to doubt them. Therefore, the voluntary cessation doctrine does not apply.[4]
B. Damages
The Museum appeals the award of $500 in damages to Miraglia. Its sole argument is that Miraglia failed to prove intent, which it says is a necessary element to receive damages. Miraglia argues that the Museum failed to preserve this argument for appeal. Alternatively, he argues that he need not prove intent or, if he does, he had evidence of intent. We conclude the Museum has not waived any argument and that Miraglia failed to provide evidence of intent.
1. Waiver
Miraglia argues that the Museum waived the issue of intent on two grounds. First, Miraglia asserts that the Museum stipulated that intent was not in dispute. Second, Miraglia asserts that the Museum failed to raise any legal argument regarding intent below. Neither of Miraglia's arguments succeeds.
To begin with, the Museum did not stipulate that intent was not in dispute. Miraglia argues that the parties listed only seven contested issues of law in the pre-trial order, and, since intent was not one of them, it must not be in dispute. But we have held that "[n]othing in [ Federal Rule of Civil Procedure 16 ] ... 'suggests that a party waives or admits an issue as to which his opponent has the burden of proof by failing to include the issue in his pretrial stipulated list of remaining issues.' " Emmons v. S. Pac. Transp. Co. , 701 F.2d 1112, 1118 (5th Cir.1983) (quoting Pac. Indem. Co. v. Broward Cty. , 465 F.2d 99, 103 (5th Cir.1972) ). In effect, this creates a default rule that unless a party specifically stipulates to an element of liability, the party with the burden of proof *573 must prove it. Failure to include the issue in a pre-trial order does not waive the issue absent some special circumstance. Here, there is no stipulation that the Museum acted with intent, so the issue is not waived.
Indeed, Miraglia's trial behavior reveals that even he thought intent was in dispute. After the pre-trial order was filed, he filed a pre-trial memorandum stating what type of intent he thought he needed to prove in order to be entitled to damages. Additionally, one of the contested issues of fact was "[w]hether plaintiff Mitchell Miraglia is entitled to any damages and, if so, the nature and extent of same[.]" As discussed in detail below, to be entitled to damages under the ADA or RA, the plaintiff must prove that the defendant acted with intent. Indeed, intent appears to be the distinguishing element of whether a plaintiff is entitled to damages, rather than merely equitable relief. Thus, when the parties said they disputed whether Miraglia was "entitled to any damages," they signaled that intent was a disputed issue.
Miraglia alternatively argues that the Museum did not raise any argument about intent below, so it falls under the general rule that an argument not raised below is waived. See N.Y. Life Ins. Co. v. Brown , 84 F.3d 137, 141-42 & n.4 (5th Cir.1996). It is true that the Museum has not identified a single instance during the district court proceedings when it argued that Miraglia did not have evidence to prove intent. But we have specifically rejected the argument that a defendant waives a challenge to the sufficiency of the evidence by failing to raise it before a bench trial.[5] "[T]he burden is on the plaintiff to prove every element. That bedrock principle does not depend on whether the defendant filed a pretrial motion challenging the evidence to support a claim. Nor does the ability to seek appellate review of the sufficiency of the evidence at trial." Malvino v. Delluniversita , 840 F.3d 223, 231 (5th Cir.2016) ; see also Colonial Penn Ins. v. Mkt. Planners Ins. Agency Inc. , 157 F.3d 1032, 1036 (5th Cir.1998) ("We see no reason why [the defendant], following a bench trial, cannot argue now for the first time that the court's findings were clearly erroneous or that they cannot support the judgment." (footnote omitted)). So despite our general rule that losing parties waive arguments that were not raised below, our cases have specifically carved out an exception for sufficiency of the evidence on an element of liability to be proved at a bench trial. Consequently, the Museum has not waived this argument.[6]
2. Merits
The Museum argues that Miraglia failed to prove the intent necessary to win money damages. Miraglia sued under Title II of the ADA, 42 U.S.C. § 12132, and under § 504 of the RA, 29 U.S.C. § 794. The two statutes have identical remedial schemes. See 42 U.S.C. § 12133 (referencing 29 U.S.C. § 794a as the source of its remedies); 29 U.S.C. § 794a(a)(2) (stating it is the remedial statute for 29 U.S.C. § 794 ). The remedial *574 scheme of the two statutes are generally interpreted interchangeably and each applies to the Museum. See Kemp v. Holder , 610 F.3d 231, 234 (5th Cir.2010) (per curiam); Hainze v. Richards , 207 F.3d 795, 799 (5th Cir.2000). To show a violation of either statute, a plaintiff must prove "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." Hale v. King , 642 F.3d 492, 499 (5th Cir.2011) (per curiam).
Suits for money damages under either statute require more. Both statutes include a private right of action for monetary damages. United States v. Georgia , 546 U.S. 151, 154, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006) (recognizing that Title II authorizes suits by private citizens for money damages against public entities that violate § 12132 ); Kemp , 610 F.3d at 234 (noting that the ADA and the RA are "judged under the same legal standards, and the same remedies are available under both Acts"); see also Frame v. City of Arlington , 657 F.3d 215, 223 (5th Cir.2011) (en banc) ("It is established that Title II and § 504 are enforceable through an implied private right of action."). A plaintiff can recover money damages only if he proves the defendant committed a violation of the ADA or RA and that the discrimination was intentional. See Delano-Pyle v. Victoria Cty. , 302 F.3d 567, 574 (5th Cir.2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination."); see also Back v. Tex. Dep't of Criminal Justice Inst. Div. , 684 F. App'x 356, 358 (5th Cir.2017) (per curiam).[7]
Miraglia contends that a plaintiff need not show intent when the plaintiff asserts a claim of disparate impact, citing Kelly v. Boeing Petroleum Services, Inc. , 61 F.3d 350, 365 (5th Cir.1995). Kelly -which was about the interpretation of a state statute-made passing comments about federal law. Id. Those comments were not part of the case's holding. But even assuming they were, the comments in Kelly do not support Miraglia's argument. Kelly does say, "[T]he reasons that the plaintiff in Alexander [v. Choate , 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985),] was not required to prove intentional handicap discrimination was because Alexander involves disparate impact." Id. But the plaintiff in Alexander brought only equitable claims, not claims for damages. 469 U.S. at 289, 105 S.Ct. 712. Kelly 's discussion of Alexander and intent have to be limited to the equitable relief context. Subsequent cases have made it clear that damages claims cannot proceed without a showing of intent. See Windham v. Harris Cty. , 875 F.3d 229, 235 n.5 (5th Cir.2017) ("To recover compensatory damages for disability discrimination under Title II of the ADA, a plaintiff must also show that the discrimination was 'intentional' in the sense that it was more than disparate impact."). Miraglia was required to prove intent.
Though intent is a necessary element of a damages claim, we have previously declined to adopt a specific standard of intent. See Perez v. Doctors Hosp. at Renaissance, Ltd. , 624 F. App'x 180, 184 (5th Cir.2015) (per curiam) (stating that "[w]e did not define what we meant by intent in *575 Delano-Pyle "); see also Frame , 657 F.3d at 231 n.71 (expressing no opinion on whether failure to make reasonable accommodations constitutes intentional discrimination). Miraglia asserts that "intent" is "purposeful action." He does not unpack that standard, except to say that there is "some distance between" it and "discriminatory animus." The Museum asserts it must be "something more than deliberate indifference." Each party thus defines intent based on what it is not. For Miraglia, it is less than "animus"; for the Museum, it is more than "deliberate indifference."
We need not delineate the precise contours in this case. Instead, we can rely on the widely accepted principle that intent requires that the defendant at least have actual notice of a violation. We previously seem to have required that a plaintiff prove, as the Museum has argued, something more than "deliberate indifference" to show intent. See Delano-Pyle , 302 F.3d at 575 ; see also Perez, 624 F. App'x at 186 (noting that this court's intentional discrimination analysis did not apply the deliberate indifference standard). Other circuits use the deliberate indifference standard. See S.H. ex rel. Durrell v. Lower Merion Sch. Dist. , 729 F.3d 248, 262-63 (3d Cir.2013) (collecting citations from five other circuits and adopting the deliberate indifference standard); but see Schultz v. Young Men's Christian Ass'n of U.S. , 139 F.3d 286, 291 (1st Cir.1998) (seemingly applying a much more difficult standard when it rejected an ADA claim because there was "not the slightest hint that the [defendant] was prompted by malice or hostility toward [the plaintiff] or toward the disabled"). But what is common between our courts and other courts is that a defendant must have notice of the violation before intent will be imputed. See Delano-Pyle , 302 F.3d at 575-76 (affirming damages based on a defendant's knowledge of the plaintiff's disability and his decision not to accommodate him); Perez , 624 F. App'x at 185 (affirming damages when a defendant "ignored clear indications" of the plaintiff's impairment and "failed to provide an effective form of communication"); Liese v. Indian River Cty. Hosp. Dist. , 701 F.3d 334, 348 (11th Cir.2012) (adopting "the twin requirements that the defendant-entity had actual notice that it was in violation of [the law] and had an opportunity to rectify the violation" for purposes of the RA). As the Ninth Circuit said, evidence that an entity "lack[ed] knowledge and understanding" about compliance requirements does not "even suggest" deliberate indifference. Ferguson v. City of Phoenix , 157 F.3d 668, 675 (9th Cir.1998).
Here, the district court failed to make any findings[8] suggesting that the Museum had notice, and Miraglia has not identified any evidence of that on appeal. Indeed, the primary fact to which Miraglia points to prove intent is that Deputy Assistant Secretary Wheat had not previously considered ADA standards for the building. But that merely shows that the Museum "lack[ed] knowledge and understanding" about compliance requirements, not that it acted with intent.[9] Id.
*576 Without findings or evidence suggesting intent, the district court erred in awarding money damages. Consequently, we REVERSE the district court's judgment granting damages and RENDER judgment in favor of the Museum. See Sutton v. United States , 234 F.3d 30 (5th Cir.2000) (per curiam) (unpublished) (reversing and rendering because the district court did not find a critical element of the claim); Gaspar v. Dowell Div., Dow Chem. Co. , 750 F.2d 460, 463-66 (5th Cir.), opinion modified on reh'g , 754 F.2d 1259 (5th Cir.1985) (reversing and rendering after rejecting district court's factual findings).
C. Attorneys' Fees
The Museum argues that since the damages judgment is reversed, that Miraglia is no longer a prevailing party who is entitled to attorneys' fees. The Museum is right that the damages claim cannot be used to justify attorneys' fees. However, we affirm the district court's award on the alternative ground that Miraglia prevailed on his equitable claims.
"We review an award of attorney's fees for abuse of discretion and the underlying factual findings for clear error." No Barriers, Inc. v. Brinker Chili's Tex., Inc. , 262 F.3d 496, 498 (5th Cir.2001). When doing so, this court is to "bear[ ] in mind [the district] court's 'superior understanding of the litigation.' " Abner v. Kan. City S. Ry. Co. , 541 F.3d 372, 378 (5th Cir.2008).
To be entitled to attorneys' fees under the ADA, a plaintiff must be the "prevailing party." 42 U.S.C. § 12205. We have said that this requires three interrelated showings: "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." Davis v. Abbott , 781 F.3d 207, 214 (5th Cir.2015) (quoting Petteway v. Henry , 738 F.3d 132, 137 (5th Cir.2013) ).
Miraglia's success below satisfies the last two requirements. Miraglia's relationship with the Museum has been altered as a direct result of his litigation. The Museum implemented what Miraglia asked for in the litigation-a reasonable accommodation to grant access to the Museum's tenants. This benefits him because he is now able to access those stores. So the second and third prongs cited in Davis are met.
The difficult question is whether the relief that Miraglia achieved was "judicially sanctioned." Id. Our three-part test is intended to reflect the Supreme Court's guidance in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources , which required that a party must achieve change through "judicial imprimatur." 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Such judicial involvement is not limited to a final judgment on the merits. For example, the Supreme Court has said that consent decrees and judicially-enforced settlements have sufficient "judicial imprimatur " to award attorneys' fees. Id. at 604, 121 S.Ct. 1835.
Here, though the district court dismissed Miraglia's equitable claims as moot, *577 it also retained jurisdiction over the claims to ensure compliance. Indeed, it followed through on its retention of jurisdiction, overseeing implementation through hearings and holding the specter of sanctions over the Museum. The effect of the court's retention of jurisdiction was the same as a limited injunction.
The Supreme Court's reasoning in Buckhannon confirms that the district court's action amounted to "judicial imprimatur." The Court specifically approved Parham v. Southwestern Bell Telephone Co. , a case cited by Congress in the legislative history of an attorneys' fees statute as an example of when a party "prevails." Buckhannon , 532 U.S. at 607 & n.9, 121 S.Ct. 1835 (discussing Parham v. Sw. Bell Tel. Co. , 433 F.2d 421 (8th Cir.1970) ). In Parham , the Eighth Circuit agreed with a district court that injunctive relief was unnecessary given progress that the defendant had made in complying with the sought after relief. 433 F.2d at 429. But the Eighth Circuit also remanded to the district court to "retain jurisdiction over the matter for a reasonable period of time to insure the continued implementation of the appellee's policy." Id. The Buckhannon Court likened that relief to a consent decree warranting attorneys' fees. 532 U.S. at 607 & n.9, 121 S.Ct. 1835.
Other circuits have recognized that retention of jurisdiction to enforce change bears "judicial imprimatur." For instance, the Second Circuit concluded that a plaintiff prevailed when a district court retained jurisdiction to enforce a settlement between the parties, even though the district court did not adopt or approve the settlement itself. See Roberson v. Giuliani , 346 F.3d 75, 82-83 (2d Cir.2003). The Ninth Circuit similarly held that when a district court retains jurisdiction to oversee the execution of a settlement agreement, the plaintiff's success has sufficient judicial imprimatur. See Richard S. v. Dep't of Developmental Servs. of Cal. , 317 F.3d 1080, 1088 (9th Cir.2003). Though those cases are settlement agreements, the dispositive feature in each was that the district courts retained jurisdiction to ensure compliance.
So it is here. The district court concluded that the Museum was not previously in compliance with the ADA and retained jurisdiction to ensure it became compliant. Miraglia is a prevailing party.
The Museum also argues that the fees are excessive because the court credited Miraglia for hours spent developing his equitable claims and the fees were out of proportion to his success. Under our precedent, a district court is required to calculate an appropriate "lodestar" amount, and then enhance or reduce it based on the circumstances of the particular case. See Combs v. City of Huntington , 829 F.3d 388, 394-95 (5th Cir.2016). The most critical factor that a court should look to in reducing the fee is the degree of success obtained. Id. at 395 ; Doe v. Chao , 540 U.S. 614, 635, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004) ("The most critical factor in determining the reasonableness of an attorney fee award is the degree of success obtained.").
The district court followed that procedure here. It started by calculating a lodestar. Then it subtracted an amount to account for time spent pursuing unmeritorious claims. It further recognized that Miraglia's "primary objective" of the suit was the equitable relief. It explicitly declined to award fees based upon time spent on "non-starter issues such as the possibility of raising sidewalks over which [the Museum] had no control and the possibility of altering store fronts on the historical building, which the ADA did not require." It determined that the "fees, costs, and expenses that [the Museum] objects to were necessary" to show a violation of the *578 ADA. On appeal, the Museum has not specified any fees awarded that fall outside the district court's findings or described why the district court's findings are clearly erroneous. The Museum provides no specifics at all in its attack on the fees. Given the deferential standard of review and the Museum's failure to identify any specific expenses that were unreasonably granted, we cannot say that the district court erred in granting the amount of fees that it did.
III. Conclusion
Consequently, we DISMISS AS MOOT Miraglia's appeal of the equitable relief claims. We REVERSE IN PART, vacating the district court's grant of monetary damages and RENDER judgment in favor of the Museum. We also AFFIRM IN PART, approving the district court's grant of Miraglia's attorneys' fees.

Though Miraglia had previously complained of violations inside the retail stores, the district court eliminated those claims through summary judgment because Miraglia never went into the stores. Miraglia has not challenged that order on appeal.

The court also noted that alterations to the sidewalk outside of the Lower Pontalba Building would be impermissible because (1) the city owned the sidewalk, and (2) the ADA does not require the Museum to alter the actual exterior of the Lower Pontalba Building, such as its doors, because the Lower Pontalba Building is considered a historic structure. Therefore, Heyback's original recommendations would not have been a feasible option.

Indeed, prior to oral argument on this appeal, Miraglia was unable to persuade the district court judge that the Museum should be held in contempt for failing to implement the accommodation.

Accordingly, we need not decide whether the Museum can be held liable in the future for its tenants' failures to accommodate individuals with disabilities.

Of course, jury trials are different. Under Federal Rule of Civil Procedure 50, a party must make and renew a motion for judgment as a matter of law to preserve the sufficiency of the evidence for appellate review. See Colonial Penn Ins. v. Mkt. Planners Ins. Agency Inc. , 157 F.3d 1032, 1036 n.3 (5th Cir.1998). The Rules do not include a similar counterpart for bench trials, like this one.

That said, it is a waste of time and judicial resources when parties fail to raise matters before the district court, regardless of whether they can make an argument on appeal. The better practice is to raise issues with the district court in the first instance.

"An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority. 5 th Cir. R. 47.5.4." Ballard v. Burton , 444 F.3d 391, 401 & n.7 (5th Cir.2006).

"We review for clear error whether the evidence supports the district court's factual findings. We review de novo whether those findings support a judgment against [the defendant], as that is a legal conclusion." Colonial Penn Ins. , 157 F.3d at 1037.

The mere filing of a lawsuit cannot be the "notice" that creates "intent." We need not decide whether matters arising during the lawsuit constitute such notice as here Miraglia has not asserted below or on appeal that any of the events occurring during the litigation provided sufficient notice to show the Museum acted with intent. We note that, throughout most of the litigation, Miraglia insisted on dramatic changes to the Lower Pontalba Building and to areas outside of the Museum's control. The Museum was concerned that any alterations to the Lower Pontalba Building, even the ones eventually adopted, might alter the historic nature of the building, which it was entitled to assert as a defense. See 42 U.S.C. § 12204(c) ; 28 C.F.R. § 36.405. Indeed, the conflicting experts did not "come together" on the result ultimately implemented until shortly before trial. Even then, Miraglia continued to insist on the sidewalk revisions.