# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2021

Lyle W. Cayce
Clerk

No. 20-30707

Damian Francois,

*Plaintiff—Appellant*,

*versus*

Our Lady of the Lake Hospital, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-393

Before Jones, Southwick, and Costa, *Circuit Judges*.
Leslie. H. Southwick, *Circuit Judge*:

Damian Francois sued Our Lady of the Lake Hospital for disability discrimination. He now appeals the district court's grant of summary judgment to the Hospital, which dismissed his claims that the Hospital violated the Rehabilitation Act and Affordable Care Act by failing to provide an on-site interpreter until the sixth day of his hospital stay. We AFFIRM.

No. 20-30707

## FACTUAL AND PROCEDURAL BACKGROUND

According to the record, Damian Francois is a deaf and "virtually illiterate" individual who communicates primarily in American Sign Language ("ASL"). This appeal concerns whether there is evidence in the summary-judgment record that creates a genuine dispute of material fact about whether the Hospital had actual notice that an on-site interpreter was necessary to provide appropriate medical care to Francois.

On April 11, 2017, Francois was admitted to the Hospital after his uncle shot him in the back. Francois' grandmother, Leona Deemer, testified in a deposition that she told the ambulance crew, the "lady at the front desk," and a doctor that Francois was deaf and "needed an interpreter." She also testified that she told Francois' attendant nurses that he was unable to understand many written or complex words. That first night, Francois underwent emergency surgery that saved his life but did not prevent his permanent paralysis.

The next morning, Francois met with John Deshotel, who was a Care Coordinator at the Hospital. Deshotel communicated with Francois in ASL, which is Deshotel's second language. He also spoke in English because Deemer was there too. According to Deshotel's sworn affidavit, he told Francois during this meeting that "the hospital wanted to meet his needs throughout his admission"; asked Francois if he needed any additional services, and Francois answered that he did not; and told Francois "if he needed any additional services, that he could ask for me and that I would come meet with him." According to Deshotel's affidavit, neither Francois nor Deemer requested an interpreter during that meeting.

During Francois' first five days, the Hospital relied on several methods of communication other than an on-site interpreter. It relied primarily on the use of a whiteboard/dry-erase board and nonverbal cues. At

2

No. 20-30707

various times, the Hospital also relied for interpretive assistance on a board with pictures, Francois' family, and a video remote interpreter.[1]

The nurses attending Francois testified that he appeared to understand their written and nonverbal communications. Allison Berry, assigned to Francois on April 12, testified to multiple instances when she communicated with Francois using the whiteboard and Francois nonverbally indicated that he understood. Another nurse, Katelyn Ferachi, was assigned to Francois on April 15. She testified that Francois "never gave any indication that he did not understand [whiteboard notes] or that [using the whiteboard] was not appropriate for him." She also testified that, when the Hospital's staff would use the whiteboard to communicate, Francois would "answer with either a nonverbal cue or a written answer on the board."

There are hospital records showing that difficulties arose in communicating with Francois. On several occasions, communications with Francois about his medical history were "limited." Two of those records, though, indicate that the Hospital was able to obtain Francois' medical history using methods other than an on-site interpreter, *i.e.*, "by writing questions and interviewing [Francois'] grandmother," and by the "use of a dry erase board and sign language through family member at bedside."

As of April 14, his third full day in the Hospital, Francois' medical condition was stable, but the Hospital knew that Francois was paralyzed. At that point, the Hospital was ready to transfer him from a trauma unit to a rehabilitation unit. That day, one of Francois' friends, Paula Rodriguez, sent

---

[1] The district court credited the Hospital's reliance on Francois' family for interpretive assistance as assisting effective communication. An ADA regulation, though, prohibits reliance on family members for interpretive assistance absent exceptions that are not applicable here, 28 C.F.R. § 35.160(c)(2), and an ACA regulation incorporates this prohibition by reference, 45 C.F.R. § 92.102(a).

No. 20-30707

a text message to the Civil Rights Coordinator at the Hospital requesting an interpreter for Francois. It appears that the text message resulted in the Hospital's attempting, unsuccessfully, to use a virtual remote interpreter.

On April 15, Rodriguez visited the Hospital, told medical personnel that the virtual remote interpreter was ineffective, and requested an on-site interpreter for Francois. Rodriguez later testified that on April 15, Francois still did not know that he was permanently paralyzed. Instead, he thought that he would have another surgery and walk again.

The Hospital provided an on-site interpreter the next day, April 16. On that day, with an on-site interpreter present, Francois met with Dr. Malia Eischen, who explained to Francois his diagnosis and prognosis of permanent paralysis. A medical record indicates that, during this meeting, Francois' family "expressed concern that [Francois] was not understanding communication that had previously been provided."

Francois remained in the Hospital until May 17. From April 16 to May 17, the Hospital provided an on-site interpreter on 61 occasions.

Francois sued the Hospital in the United States District Court for the Middle District of Louisiana. In the live complaint, Francois asserted claims against the Hospital under Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and the Louisiana Commission on Human Rights, La. Rev. Stat. § 51:2231. Francois sought a declaratory judgment, injunctive relief, compensatory damages, costs and attorneys' fees, and any other relief necessary and appropriate. In February 2018, the district court dismissed Francois' state-law claims. In October 2019, Francois voluntarily dismissed his ADA claim. Only his RA and ACA claims remained. The Hospital filed for summary judgment on those two remaining claims.

4

No. 20-30707

After briefing, the district court granted summary judgment in favor of the Hospital.  As for Francois compensatory-damages claims, the court held that Francois failed to establish the requisite intentional discrimination because he "failed to present evidence that [the Hospital's] staff had actual notice that [Francois'] rights were being violated."  The court reasoned that the Hospital "made good faith efforts to accommodate [Francois] and believed that communication via written messages and family assistance was effective, especially considering [Francois] never indicated a lack of understanding or requested an interpreter or to meet with Deshotel." According to the court, the summary-judgment evidence "may demonstrate negligence or carelessness," but not intentional discrimination.  As for the injunctive-relief claims, the court held that Francois lacked standing because he failed to show an injury in fact.  As for available damages, the court correctly observed that that emotional-distress damages are unavailable under *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673 (5th Cir. 2020), *cert. granted*, --- S. Ct.  ----, 2021 WL 2742781 (July 2, 2021) (No. 20-219).  The district court then determined that compensatory damages for "denial of self-determination" are unavailable too.[2]

The district court dismissed all of Francois' remaining claims with prejudice and entered final judgment for the Hospital. Francois timely appealed.

---

[2] Francois argues that *Cummings* was incorrectly decided as to the availability of emotional-distress damages.  He also argues that, under *Cummings*, damages for "denial of self-determination" should be available.  We do not address these issues because of our holding that Francois did not make a summary-judgment showing of intentional discrimination.

No. 20-30707

## DISCUSSION

We review the grant of summary judgment *de novo*, applying the same standards as the district court. *Smith v. Harris Cnty.*, 956 F.3d 311, 316 (5th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). "A fact is material if its resolution could affect the outcome of the action." *Id.* (quotation marks and citation omitted). On appeal from summary judgment, we view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *SEC v. Kahlon*, 873 F.3d 500, 504 (5th Cir. 2017).

Francois contends that his need for an on-site interpreter was "open and obvious" and that the Hospital's failure to provide one until April 16 constitutes intentional discrimination. He claims that, because of the Hospital's delay in providing an on-site interpreter, Francois did not understand until the sixth day in the Hospital that he was paralyzed and wrongfully believed that he would have surgery and walk again.

The Hospital disagrees with Francois' view of the evidence. It asserts that the evidence shows that its staff had no reason to know that their means of communication were ineffective. The Hospital contends that an on-site interpreter was not requested until April 15, and at no time did Francois' nurses or Deshotel have reason to believe that an on-site interpreter was necessary. The Hospital's position is that it took reasonable steps to accommodate Francois and arranged for an on-site interpreter as soon as it learned of Francois' need for one.

6

No. 20-30707

First, we will explain the analytical frameworks for Francois' claims for disability discrimination under Section 504 of the RA and Section 1557 of the ACA. Second, we will analyze whether Francois presented sufficient evidence to survive summary judgment. We conclude that Francois failed to make a summary-judgment showing of intentional discrimination because the evidence, viewed in the light most favorable to Francois, is not sufficient for a reasonable jury to determine that the Hospital had actual knowledge of the need for an on-site interpreter.

I.    *The analytical frameworks*

Section 504 of the RA prohibits disability discrimination by recipients of federal funds. 29 U.S.C. § 794(a).[3] The RA's implementing regulations provide additional requirements and guidance. First, a recipient of federal funds must "provide *appropriate* auxiliary aids to persons with impaired sensory, manual, or speaking skills, where *necessary* to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 84.52(d)(1) (emphasis added). Second, "aids, benefits, and services, to be equally effective, are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but must afford handicapped persons *equal opportunity* to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." *Id.* § 84.4(b)(2).

---

[3] Section 504 of the RA provides in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

No. 20-30707

"The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). Thus, precedent interpreting or applying the ADA applies with equal force to a claim under the RA. *Id.*

Section 1557 of the ACA prohibits discrimination based on any of the grounds protected under Title VI, Title IX, the Age Discrimination Act, and the RA, during the provision of health care. 42 U.S.C. § 18116(a).[4] The ACA's implementing regulations also provide additional requirements and guidance. First, a health program or activity receiving federal funds must "provide *appropriate* auxiliary aids and services, including interpreters and information in alternate formats, to individuals with impaired sensory, manual, or speaking skills, where *necessary* to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 92.102(b) (emphasis added). Under the ACA, auxiliary aids include, among other things, "[i]nterpreters on-site or through video remote interpreting (VRI) services," "note takers," "written materials," "exchange of written notes,"

---

[4] Section 1557 of the ACA provides in relevant part:

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subject to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).

No. 20-30707

and "other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." *Id.* § 92.102(b)(1)(i).

Section 504 of the RA and Section 1557 of the ACA provide private causes of action. *See* RA, 29 U.S.C. § 794a; ACA, 42 U.S.C. § 18116(a) (incorporating the "enforcement mechanisms" of the other civil rights statutes). For disability-discrimination claims, the ACA incorporates the substantive analytical framework of the RA. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019) ("By referring to four statutes, Congress incorporated the legal standards that define discrimination under each one.").[5] Accordingly, we will analyze Francois' RA and ACA claims together.

To establish a *prima facie* case for disability discrimination under the RA, and by extension the ACA, a plaintiff must show that: (1) he has a qualifying disability; (2) he is being excluded from participation in, denied the benefits of, or otherwise discriminated against by a covered entity; and (3) such discrimination is by reason of his disability. *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018). A *prima facie* case requires evidence that the plaintiff's disability, limitation, and necessary reasonable accommodation were "known by" the covered entity.

---

[5] The Ninth Circuit recently agreed with the Sixth Circuit's *BlueCross BlueShield* holding that the ACA incorporates the substantive analytical framework of the RA for disability-discrimination claims, but it implicitly disagreed with the *BlueCross BlueShield* holding about whether the RA prohibits disparate-impact discrimination. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210–12 (9th Cir. 2020), *cert. granted in part*, --- S. Ct. ----, 2021 WL 2742790 (July 2, 2021) (No. 20-1374). The grant of *certiorari* in *CVS Pharmacy* is limited to "[w]hether section 504 of the Rehabilitation Act, and by extension the ACA, provides a disparate-impact cause of action for plaintiffs alleging disability discrimination." Petition for Writ of Certiorari, *CVS Pharmacy, Inc. v. Doe*, No. 20-1374 (U.S. Mar. 26, 2021).

*Windham v. Harris Cnty.*, 875 F.3d 229, 236 (5th Cir. 2017). "Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to [the covered] entity or its employees and requested an accommodation in direct and specific terms." *Smith*, 956 F.3d at 317. "When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent,' to the entity's relevant agents." *Windham*, 975 F.3d at 237.[6]

Establishing a *prima facie* case entitles a plaintiff to pursue equitable relief. *Miraglia*, 901 F.3d at 574. Compensatory damages, however, require a showing of intentional discrimination. *Id.* This circuit has declined to "delineate the precise contours" of intentional discrimination. *Id.* at 575. At a minimum, though, "intent requires that the defendant at least have actual notice of a violation." *Id.*

Francois expressly abandoned his claim for injunctive relief, so all that remains for us are his claims for declaratory relief, nominal damages, and compensatory monetary damages. Francois has not pressed on appeal that his claims for declaratory relief should survive even in the absence of intentional discrimination.[7] Likewise, he has made no attempt to argue that

---

[6] We have not resolved "what type of knowledge is required" for a showing of an "open, obvious, and apparent" disability, limitation, and necessary reasonable accommodation. *Windham*, 975 F.3d at 237. "Although our caselaw speaks generally in terms of the entity's subjective knowledge, we do not appear to have confronted this question directly." *Id.* (footnote omitted).

[7] On appeal, Francois' briefs focus on two questions: (1) whether the Hospital committed intentional discrimination, and (2) whether he can pursue damages for "denial of self-determination." A claim for declaratory relief is equitable in nature and not subject to the intentional-discrimination standard. *See Miraglia*, 901 F.3d at 574. Francois, however, has not pressed that his claims for declaratory relief (or equitable relief generally) are subject to a lower evidentiary burden, that the district court erred by dismissing those claims, and that we should reverse and remand on that ground. As they are not pressed on

his nominal-damages claims, if any exist, are not subject to the same intentional-discrimination standard as a claim for compensatory monetary damages. As a result, to survive summary judgment, Francois must have offered evidence of intentional discrimination, which as we just stated means he must at least show the Hospital's actual notice. *Miraglia*, 901 F.3d at 574.

The district court granted the Hospital's motion for summary judgment because Francois failed to show intentional discrimination. A claim of intentional discrimination requires evidence sufficient for a reasonable jury to conclude that the Hospital had actual notice that its failure to provide an on-site interpreter until April 16 denied Francois an equal opportunity to participate in the medical process. We agree with the Eleventh Circuit that when "effective communication under the circumstances is achievable with something less than an on-site interpreter, then the hospital is well within its ADA and RA obligations to rely on other alternatives." *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 836 (11th Cir. 2017). Here, the claims of intentional discrimination fail unless there is evidence the Hospital actually knew that it was not effectively communicating with Francois with the methods it was using.

We have affirmed a district court's finding of intentional discrimination when a hearing-impaired arrestee could not understand the police officer, the officer was aware that his attempts to communicate were ineffective, and the officer failed to try more effective methods of communication. *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 575–76 (5th Cir. 2002). We have held in a non-precedential opinion that a plaintiff raised a genuine dispute of material fact where "on several occasions, an interpreter

---

appeal, those arguments are forfeited. *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004); *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (explaining that courts must "follow the principle of party presentation").

was requested but not provided," the hospital's chosen means of communication were "often ineffective," and the hospital "ignored clear indications" that further accommodation was necessary. *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185 (5th Cir. 2015). Most recently, we held that a plaintiff had shown intentional discrimination when a jail's staff was subjectively aware of a detainee's need for a wheelchair, accommodated her only with crutches, watched her fall while using the crutches, and still refused to provide a wheelchair. *Cadena*, 946 F.3d at 726.

Accordingly, our intentional-discrimination cases turn on the defendant's subjective awareness of the need for further accommodation.

## II.    *Analysis of the summary-judgment evidence*

We now review the summary-judgment record.

First, the testimony of Francois' linguistics expert establishes, at most, constructive notice of Francois' need for an on-site interpreter. The expert, Dr. Judy Shepard-Kegl, stated that "writing, lipreading, and speech" were "wholly inadequate for communication access" for Francois. She explained that it would be "wishful thinking on the part of the service providers" to assume that writing, lipreading, and speech were sufficient methods of communication, and that such an assumption was "evidence of how little communication was actually happening." A reasonable jury could conclude from the expert's testimony that the Hospital should have known that Francois needed further accommodation. What the Hospital *should have known*, though, is not evidence of actual notice.

Second, evidence that Francois in fact did not understand the nurses' communications does not show that the Hospital (or its staff) knew that Francois was not understanding. By contrast, the nurses testified that Francois appeared to understand their written and nonverbal communications. We do not suggest that the nurses' testimony about

No. 20-30707

successful communication is enough to secure summary judgment.[8]  Here, though, the record is devoid of evidence that the Hospital knew that its efforts to communicate with Francois were ineffective.

Only Deemer testified as to some evidence that made the Hospital's staff aware that Francois was not understanding.  She testified that after a nurse wrote Francois a note, he "was just looking at her" because "he didn't understand what she was saying."  She also testified that he "will draw up in his shoulders or flop his hands" when he does not understand but did not indicate whether this ever happened at the Hospital.  This evidence, though, does not defeat the Hospital's motion for summary judgment because there is no indication that the Hospital quit trying to communicate with Francois or that its efforts were ultimately unsuccessful.  As a result, Deemer's testimony does not constitute evidence that the Hospital actually knew that only an on-site interpreter would suffice.

Third, Francois argues that his medical records show that the Hospital "knew Mr. Francois was not communicating effectively and nonetheless failed to summon or provide an ASL interpreter."  Several medical records do support that communications with Francois about his medical history were "limited."  The medical records also show, though, that Francois' medical history was obtained by several methods short of bringing in an on-site interpreter, including writing questions on the

---

[8] As the Eleventh Circuit explained, "it is error to conclude on summary judgment that the mere successful communication of the primary symptoms, treatment plan, and discharge instructions is enough, as a matter of law, to preclude liability under the ADA and RA." *Silva*, 856 F.3d at 835.  Rather, the opportunity must focus on whether the plaintiff is receiving an equal opportunity to participate in the overall informational exchange. RA, 45 C.F.R. § 84.52(d)(1); ACA, 45 C.F.R. § 92.102(b). In this case, we must consider these statutory requirements in light of the additional burden that Francois show intent.

whiteboard, asking Francois' grandmother about his medical history, and utilizing Francois' grandmother for ASL interpretive assistance. Accordingly, the records do not show that the Hospital actually knew that nothing short of an on-site interpreter was enough.  Rather, the evidence shows only that, from the Hospital's perspective, "effective communication under the circumstances [was] achievable with something less than an on-site interpreter."  *Silva*, 856 F.3d at 836.

Fourth, Francois argues that the Hospital's failure to comply with its internal policy is evidence of intent.[9]  The policy mirrors the regulatory requirements in that an interpreter must be utilized only if "necessary."  *See* RA, 45 C.F.R. § 84.52(d)(1); ACA, 45 C.F.R. § 92.102(b).  It follows that the Hospital did not violate the policy unless other methods were not effective. Ultimately, this argument fails because it does not dispute the otherwise-uncontroverted evidence that the Hospital's staff believed that effective communication was achievable with something less than an on-site interpreter.

Finally, Francois argues that Deemer made a satisfactory request for an interpreter.  Deemer testified that she told hospital staff upon Francois' admittance that he "was speech and hearing impaired, and [that] he needed an interpreter."  Even with this evidence, the summary-judgment record falls short of establishing that the Hospital had actual knowledge that only an on-site interpreter would meet Francois' needs.  A patient is not entitled to an on-site interpreter merely because he or someone on his behalf requests one.

---

[9] The policy states that "[i]nterpreter services will be provided in all necessary circumstances where there is a need for complex diagnostic or treatment information to be communicated effectively with a sensory-impaired patient."  It also states that circumstances which "may" require an interpreter include, among other things, "[d]iscussing presenting symptoms, medications, [and] medical history," as well as "[e]xplaining diagnosis, prognosis[,] or treatment options."

*See Silva*, 856 F.3d at 835–36.  Rather, a patient is entitled to an on-site interpreter when necessary.  RA, 45 C.F.R. § 84.52(d)(1); ACA, 45 C.F.R. § 92.102(b).  The morning after Deemer made the request, the Hospital sent an employee who communicated in ASL to Francois' room.  During that meeting, Francois never asked for an interpreter in response to a direct question about the services he needed.  Later, when another request was made, the Hospital promptly provided an ASL interpreter and continued to do so throughout Francois' hospital stay.  Considered along with the evidence showing that the Hospital's staff subjectively believed that they were adequately communicating with Francois via other means, the record does not support a finding of intentional discrimination.

The summary-judgment evidence, viewed in the light most favorable to Francois, is sufficient for a reasonable jury to determine that the Hospital *should have known* that Francois needed an on-site interpreter.  Fatal to Francois' claims, the evidence is not sufficient for a reasonable jury to determine that the Hospital had actual knowledge of Francois' need for an on-site interpreter.

The Hospital is entitled to summary judgment because Francois failed to make a summary-judgment showing of intentional discrimination. Francois has made no attempt to argue in this appeal or in district court that his nominal-damage claims, if any exist, are not subject to the same intentional-discrimination standard.  Further, Francois has expressly abandoned his claims for injunctive relief and has not pressed his claim for a declaratory judgment on appeal.  AFFIRMED.