# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 3, 2020

Lyle W. Cayce
Clerk

No. 18-50765

APRIL CADENA,

> Plaintiff - Appellant

v.

EL PASO COUNTY,

> Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

April Cadena seeks review of the district court's dismissal of her claim against El Paso County under the Americans with Disabilities Act (ADA) and 42 U.S.C. § 1983. We reverse the district court's summary judgment dismissal of Cadena's ADA claim because a reasonable jury could find that the County intentionally denied Cadena reasonable accommodations. However, we affirm summary judgment dismissal of Cadena's § 1983 claim because Cadena cannot show that she was subjected to an unconstitutional condition of confinement, or that the medical treatment that she received was so deficient that it amounted to deliberate indifference to a serious medical need.

No. 18-50765

## I.

The El Paso police arrested Cadena on June 23, 2014 on an outstanding warrant for failure to appear.  At the time of her arrest, Cadena was in a wheelchair because she had undergone surgery on her right leg to repair a broken tibia three days earlier.  She was discharged from the hospital only 24 hours before her arrest with instructions stating "no weight bearing" for her right leg and notes from a physical therapist explaining that she "will not be a candidate for crutches . . . and will have to be discharged with a wheelchair."

Cadena was then taken to the El Paso County Detention Facility, where a licensed vocational nurse (LVN) conducted a medical intake procedure. Viewing the facts in the light most favorable to Cadena, she told the LVN that she could not walk, which was why she had a wheelchair.  The intake form filled out by the LVN indicated that Cadena "had knee surgery yesterday" but determined that she was "able to stand independently" because Cadena stood during the intake when asked to do so.  Based on the intake procedure, the County's physician, Dr. Salazar, gave telephonic orders that Cadena be given pain medication, that she follow up with an orthopedic physician in two weeks, that she be given crutches, that she be assigned to a lower bunk, and that she be given wound care on her right leg.  Cadena testified that after intake, her wheelchair was taken away.  She also testified that as she was being led to her cell, she overheard staff saying "that there was no space in the county for a person in a wheelchair."

A few hours later, Cadena visited the medical clinic and requested a wheelchair.  Cadena told the two officers escorting her to the clinic that she could not walk with crutches and needed a wheelchair.  On the way to the clinic, she stumbled while attempting to move using crutches, and the officers had to catch her before she hit the floor.  After this, Officer Davila, one of the officers escorting her, obtained a wheelchair and wheeled Cadena the rest of

2

the way to the clinic. At the clinic, Cadena testified that Nurse Fuentes told her that there was no space on the floor for a wheelchair. Cadena testified that she was left in her cell with only crutches after the clinic visit.

On June 25, 2014 at 10:30 a.m., two days after her arrival, the medical staff entered an order allowing Cadena to keep her wheelchair. At about 4:30 p.m. that day, however, Cadena did yet not have a wheelchair at mealtime and fell in her cell while trying to carry a tray with food on crutches. In Cadena's unit, patients were required to walk to the end of the cellblock to retrieve trays of food and to carry the trays back to their cells to eat. Cadena testified that Officer Davila, the same officer who had escorted her to the clinic, was overseeing this process. Cadena testified that she asked Officer Davila to deviate from this procedure—either by bringing Cadena's tray to her cell or by allowing Cadena to eat in the area where the trays were being handed out—so that Cadena would not have to carry a tray while using crutches. Cadena testified that Officer Davila refused these requests. Cadena fell while trying to carry both her tray and her crutches back to her cell.

Cadena was taken to the jail's medical clinic, and then to the emergency room. The emergency room physician recommended a boot, non-weight bearing status, and a follow up appointment with Cadena's orthopedic surgeon the next day. After her fall, Cadena reported pain in her leg as a 7 out of 10. Cadena testified that her leg was twisted with her foot facing the middle of her body, and her medical records confirm that her tibia was "malaligned." The County made a follow-up appointment for Cadena to see an orthopedic surgeon at Texas Tech Orthopedic Clinic on July 14, 2014, which was the earliest appointment available at that clinic. Cadena was also transferred to the housing unit adjacent to the medical clinic.

On July 14, Cadena went to an appointment at the Texas Tech Orthopedic Clinic. On July 18, 2014, Cadena attended a court hearing, after

which she was discharged from custody into a Women's Substance Abuse Treatment Facility (WSAT).  On July 22, 2014, while residing at WSAT, Cadena underwent a second surgery.  Cadena's medical records from her surgery at Texas Tech state that Cadena was "in extreme varus" and "in extreme pain" before corrective surgery.  Even after the second surgery, Cadena alleges that she has continuing nerve damage in her right leg and that she cannot engage in recreational activities or ambulate normally.

On June 21, 2016, Cadena filed a complaint in the Western District of Texas against El Paso County, Corizon Health Inc., and Dr. Salazar.  Cadena claims that El Paso County violated Title II of the ADA and Section 504 of the Rehabilitation Act by failing to provide her with reasonable accommodations. Cadena also claims that the County was deliberately indifferent to her serious medical needs in violation of the Fourteenth Amendment.  Cadena alleges that these constitutional violations were the result of the County's unlawful policies, procedures, and customs.

On August 25, 2017, Corizon Health and Dr. Salazar filed a motion for summary judgment on Cadena's claims against them.  On October 13, 2017, El Paso County filed a separate motion for summary judgment on Cadena's claims against it.  On March 26, 2018, the district court adopted the Magistrate's report and recommendation granting Corizon Health and Dr. Salazar's motion for summary judgment and dismissing Cadena's claims against those defendants.  The district court then adopted in part and reversed in part the Magistrate's report and recommendation regarding El Paso County's motion, dismissing the remainder of Cadena's claims.

On August 30, 2018, Cadena appealed the district court's order granting the County's motion for summary judgment.

4

No. 18-50765

## II.

This court reviews the district court's summary judgment ruling *de novo*. *Windham v. Harris Cty.*, 875 F.3d 229, 234 (5th Cir. 2017). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Kahlon*, 873 F.3d 500, 504 (5th Cir. 2017). We may affirm a grant of summary judgment on any ground the record supports. *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 323 (5th Cir. 2017).

## III.

### A.    ADA Claim

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It defines "public entities" to include local governments. 42 U.S.C. § 12131(1)(A). The Supreme Court has held that prisons are public entities that may not exclude disabled individuals from participation in or deny them the benefits of their services, programs, or activities. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

Similarly, the Rehabilitation Act prohibits any "otherwise qualified individual with a disability in the United States" from being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance," including any instrumentality of a local government. 29 U.S.C. § 794. The remedies, procedures, and rights available under the Rehabilitation

No. 18-50765

Act parallel those available under the ADA. *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133). "Thus, '[j]urisprudence interpreting either section is applicable to both.'" *Id.* (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)).[1]

To make out a *prima facie* case under Title II or the Rehabilitation Act, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). "In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005); *see also Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 Fed. App'x 214, 215 (5th Cir. 2015) (adapting the failure-to-accommodate standard from Title I to Title II); *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (same). For this type of claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious. *Windham*, 875 F.3d at 236–37 (citing *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)). A plaintiff's requested accommodation must also be "reasonable," meaning that it does not

---

[1]    The Acts do have different causation requirements. Under the Rehabilitation Act, the exclusion must be "solely by reason of her or his disability," 29 U.S.C. § 794(a), where under Title II of the ADA, "discrimination need not be the sole reason" for the exclusion. *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (quoting *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 503–04 (5th Cir. 2002)).

impose undue financial or administrative burdens or "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *see also Frame v. City of Arlington*, 657 F.3d 215, 232 (5th Cir. 2011) (en banc).

Finally, to recover compensatory damages, a plaintiff must also prove that the discrimination was intentional.[2] *Delano-Pyle*, 302 F.3d at 574. This court has hesitated to "delineate the precise contours" of the standard for showing intentionality. *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018). But the cases to have touched on the issue require "something more than 'deliberate indifference,'" despite most other circuits defining the requirement as equivalent to deliberate indifference. *Id.* (quoting *Delano-Pyle*, 302 F.3d at 575). In practice, this court has affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt. *Delano-Pyle*, 302 F.3d at 575–76. The court has also found that a plaintiff created a genuine dispute as to intentional discrimination when the evidence indicated that "on several occasions, an interpreter was requested but not provided," and one of the forms of communication that a hospital used to speak with a hearing-impaired patient was often ineffective. *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185 (5th Cir. 2015).

There is no dispute that Cadena was a qualifying individual under the ADA. And a disabled inmate's right to mobility within a prison is well-established. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [the plaintiff's] disability-related needs in such fundamentals as

---

[2]    The ADA creates a private right of action against public entities for both monetary and equitable relief. *See* 42 U.S.C. § 12133.

mobility . . . constituted 'exclu[sion] from participation in or ... deni[al of] the benefits of' the prison's 'services, programs, or activities.'" (quoting 42 U.S.C. § 12132)). *Cf. Frame*, 657 F.3d at 231 (reaffirming that public entities must make reasonable accommodations for mobility-impaired individuals). Cadena repeatedly requested various types of accommodations, and her disability was open and obvious. Therefore, the County was obligated to provide Cadena with reasonable accommodations that allowed her to access its services. Cadena has pointed to several different types of requests that the County denied. A reasonable jury could find that some, or all, of these requests were reasonable, and that the County violated the ADA by refusing to accommodate Cadena.

Viewing the facts in the light most favorable to Cadena, the County provided Cadena with crutches, but it denied her other accommodations, such as a wheelchair, a modified food delivery procedure, and various forms of medical care. The County is not required to acquiesce to Cadena's choice of accommodations merely because Cadena requested them. *See Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012) ("[W]e accord the officials at [prisons] deference in their determination of an appropriate accommodation."). But it is required to provide her with reasonable accommodations that give "meaningful access to the benefit that the grantee offers" without posing an undue burden to the County. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Providing an individual with a broken leg with crutches may reasonably accommodate most individuals with this disability. But here, a jury could find that crutches did not provide Cadena with meaningful access to the County's services, in part because she could not safely ambulate within the facility on crutches. Cadena testified that she could not walk with crutches, and she informed the staff that she needed a wheelchair at least three times. Further, Officer Davila testified that she witnessed Cadena fall as she attempted to use crutches, and Cadena's

treating physician from Providence indicated that Cadena "will not be a candidate for crutches . . . and will have to be discharged with a wheelchair."

A related accommodation that Cadena requested was that the County use an alternative process to deliver her food to her.  Even if crutches were a reasonable accommodation, a jury could find that the County violated the ADA by forcing Cadena to carry a tray of food while using crutches.  In the moments leading up to Cadena's fall, Cadena testified that she was attempting to carry her crutches and a tray full of food despite surgery to her right leg days earlier. Cadena testified that she told Officer Davila, the same officer who had seen her fall while using crutches a few days earlier, that she needed help transporting her tray because of her crutches.  She testified that Davila "kept on telling [Cadena] that [she] had to come out of [her] room and get it" despite Cadena's requests.  A jury could find that the County's mandate that Cadena walk with crutches while holding a tray of food in order to eat violated the ADA.  Thus, taken together, Cadena's requested accommodations and the County's refusal to provide them create material disputes of fact as to whether the County violated the ADA.

The district court did not credit Cadena's testimony about the County's refusal to modify food delivery procedures, citing a rule that self-serving testimony does not create a material dispute of fact.  It is true that affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).  But Cadena's detailed deposition testimony, which is largely unrefuted and consistent with other sources, such as Officer Davila's testimony and her medical records, cannot be classified as the type of "vague" and "conclusory" evidence that fails to create a dispute of material fact. *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013).  Rule 56 allows the use of deposition testimony to show that a fact

is genuinely disputed.  Fed. R. Civ. P. 56(c)(1)(A).  "[A]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There is no evidence that Cadena's testimony is in bad faith or is contradictory.  Indeed, Cadena's testimony is not the only evidence of her fall.  Officer Real testified that she found Cadena "just laying on the floor, and there was a plate of food."  Cadena's testimony therefore creates a material dispute as to whether the County denied Cadena a reasonable accommodation when it refused to modify the food delivery procedure.

Although a closer question, a jury could also reasonably determine that the County's refusal to accommodate Cadena constituted intentional discrimination.  Cadena was admitted in a wheelchair, which she contends was taken away by jail staff.  A few hours later, she attempted to walk on crutches in the presence of two County employees and was too unstable to do so.  The record shows that the employees were aware that the crutches were unsafe because they obtained a wheelchair and wheeled Cadena the rest of the way to the clinic.  And two days later, the County medical staff agreed that Cadena required a wheelchair.  Further, Cadena testified that, once at the clinic, she requested a wheelchair, but the nurse who saw her denied the request because the facility did not have space for a person in a wheelchair.  Finally, the same employee who had seen Cadena fall while using crutches two days earlier then required Cadena to not only use crutches, but also to carry a tray on crutches, in order to eat.

These facts are analogous to those in *Delano-Pyle* and *Perez*, in which defendants continued to refuse the requested accommodation despite indications that further accommodation was necessary.  *Delano-Pyle*, 302 F.3d at 575–76; *Perez*, 624 F. App'x at 185.  By contrast, this was not a situation in

which there was "confusion amongst the . . . staff as to the procedure for" obtaining the requested accommodations. *Back v. Tex. Dep't of Criminal Justice Institutional Div.*, 684 F. App'x 356, 358 (5th Cir. 2017) (affirming a grant of summary judgment when a denial of leg braces and similar medical equipment was the result of negligence and confusion rather than being intentional). The County clearly had wheelchairs at its disposal because Cadena was admitted in a wheelchair and she was allowed to use one to travel to the clinic on her first day. A jury could find, therefore, that its ongoing refusal to let her use a wheelchair or to otherwise modify its policies was intentional.

The County argues that even if it refused Cadena's requests for a wheelchair, Cadena has no claim under the ADA because the court must defer to Dr. Salazar's reasoned medical judgment that Cadena did not need a wheelchair. Courts confirm that the ADA does not typically provide a remedy for negligent medical treatment. *See, e.g.*, *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." (internal quotation marks omitted)). But mobility aids have been characterized by the Supreme Court and the Second Circuit as disability accommodations. *See Georgia*, 546 U.S. at 157 ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [the plaintiff's] disability-related needs *in such fundamentals as mobility*" constituted a violation of the ADA (emphasis added)); *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016) (treating a request for a motorized wheelchair as a request for a reasonable accommodation rather than medical treatment). Further, Dr. Salazar explained that his order providing crutches to Cadena was meant to indicate that Cadena have access to crutches in addition to, not in lieu of, a wheelchair. Finally, the County's medical staff explicitly recommended on an

inmate special medical instructions form that "inmate keep wheelchair" on the morning of June 25, 2014.  For these reasons, the County's characterization that it was merely deferring to a reasoned medical judgment is inaccurate.

Cadena has shown a material dispute as to whether the County denied her reasonable accommodations in violation of the ADA.  Accordingly, we reverse the district court's grant of summary judgment as to Cadena's claim under the ADA.

### B.    Section 1983 Claim

As a pretrial detainee contesting the conditions of her confinement, Cadena's §1983 claim invokes the protections of the Fourteenth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)); *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 457 (5th Cir. 2001).  The standard is the same as that for a prisoner under the Eighth Amendment.  *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019).  A pretrial detainee may prove a constitutional violation either by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission.  *Hare*, 74 F.3d at 644–45.

For a conditions of confinement claim, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535. If "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective," it is assumed that "by the municipality's very promulgation and maintenance of the complained-of condition, that it intended to cause the alleged constitutional deprivation."  *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).  Our court has said that a condition may take the form of "a rule," a "restriction," "an identifiable intended condition or practice," or "acts or omissions" by a jail official that are "sufficiently extended or pervasive."  *Estate of Henson v. Wichita Cty. Tex.*, 795 F.3d 456, 468 (5th Cir.

2015) (quoting *Duvall v. Dallas Cty.*, 631 F.3d 203, 207 (5th Cir. 2011)). "In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 645). But "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Id.* at 454. To prevail on a claim of unconstitutional conditions of confinement, a plaintiff must show: "(1) 'a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive'; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the inmate's] constitutional rights." *Duvall*, 631 F.3d at 207 (quoting *Hare*, 74 F.3d at 645).

To establish municipal liability in an episodic-act case, a plaintiff must show "(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528–29 (5th Cir. 1999)). Under the first prong, "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). The plaintiff must also demonstrate deliberate indifference, which requires that the defendant act with "something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Deliberate indifference is an

extremely high standard to meet." *Crumbliss v. Darden*, 469 F. App'x 325, 327 (5th Cir. 2012) (quoting *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009)). Finally, to prevail against a municipality, a plaintiff must show either "written policy statements, ordinances, or regulations" or "a widespread practice that is 'so common and well-settled as to . . . fairly represent[] municipal policy'" that was the moving force behind the violation. *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

Cadena has not put forth evidence that creates a material dispute of fact as to whether she was subjected to unconstitutional conditions of confinement. She points to the County's use of LVNs to perform medical intake procedures, its policy of making medical matters the sole province of the treating physician, its requirement that inmates on crutches carry their food trays back to their cells, its failure to provide prompt medical care for non-medical reasons, and its decision to use a single preferred provider for outside medical services. However, Cadena has not shown that a jury could find that any of these practices amounted to an unconstitutional condition of confinement. Cadena provides no evidence that most of these conditions, such as using LVNs to perform intake, giving treating physicians control over medical matters, short delays in follow-up appointments with outside providers, and using a preferred outside provider, violated her constitutional rights. *Shepherd,* 591 F.3d at 454 ("[A] detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for [her] basic human needs"). Cadena has not shown that these policies caused her extreme suffering or resulted in adverse medical outcomes serious enough to establish a constitutional violation. *Cf. id.* (finding a constitutional violation when the plaintiff had "demonstrated that serious injury and death were the inevitable results of the jail's gross inattention to the needs of inmates with chronic

14

illness"). Indeed, Cadena has not shown that the treatment she would have received in the absence of these policies would have been meaningfully better than the care she did receive.

Cadena also has not put forth evidence that these conditions were sufficiently extended or pervasive. She has identified only one other instance in which an inmate on crutches was allegedly required to carry a food tray and only three other instances in which inmates filed grievances alleging delayed medical care. A few isolated events do not amount to a condition of confinement. *See id.* In instances where this court has found that an unconstitutional condition was sufficiently pervasive, the plaintiff's evidence has been more exhaustive or authoritative. *See id.* at 453 (upholding a condition of confinement claim as to a *de facto* policy of failing to properly treat inmates with chronic illness on the basis of "a comprehensive evaluative report commissioned by the County, the DOJ report, affidavits from employees of the jail and its medical contractor attesting to the accuracy and applicability of the reports, and a plethora of additional documentary evidence"); *Duvall*, 631 F.3d at 209 (finding a sufficient evidentiary basis for a custom or practice when the jury heard testimony from "[c]ounty officials and outside experts [who] stated that the County failed to take the well-known steps needed to control the infection," in addition to other evidence). Accordingly, Cadena cannot prevail on a conditions of confinement theory.

Nor could a reasonable jury find for Cadena under an episodic act theory. Cadena relies on many of the same acts that form the basis of her ADA claim, but Cadena's §1983 claim is inapposite because the Eighth Amendment does not require that the County affirmatively accommodate Cadena with, here, mobility aids. Thus, Cadena's § 1983 claim amounts to complaints about the quality of medical care that she received while incarcerated. A prisoner's disagreement with medical treatment, and even medical malpractice, does not

constitute deliberate indifference absent exceptional circumstances. *Gobert*, 463 F.3d at 346. "For an episodic act claim relying on an alleged denial or delay of medical care, [a prisoner] can show deliberate indifference by demonstrating that an official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019) (quoting *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018)); *see also Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Cadena has not shown that the County refused to treat her or ignored her complaints. While her medical care was not "the best that money could buy," the County was responsive to Cadena's medical needs. *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). It immediately assessed her medical needs, assigned her to a lower bunk, gave her crutches, and provided her with pain medication. After her fall, the County took her to the emergency room the same night. The County then scheduled a follow-up surgery, which occurred approximately a month after Cadena's fall. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Cadena has made no showing that any lapses in medical care amounted to constitutional violations. As to her claim that the County made inmates on crutches carry food trays, Cadena has not put forth evidence that would allow a jury to conclude that this practice amounted to a policy or custom that was "so widespread as to have the force of law." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997). Thus, the district court correctly dismissed her claim under § 1983 and the Fourteenth Amendment.

No. 18-50765

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of Cadena's § 1983 claim.  We REVERSE the district court's dismissal of Cadena's ADA claim, and we REMAND the case for further proceedings consistent with this opinion.