# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 8, 2021

Lyle W. Cayce
Clerk

No. 19-10781

Charles Epley, *also known as* Pierryck Castellazzi,

*Plaintiff—Appellant*,

*versus*

Marco Gonzalez, *Sergeant at Montford*; David Camargo, *Officer at Montford*; Julio Espinosa, III, *Officer at Montford*; Rafael Guitron, III, *Officer at Montford*; Bobby Gutierrez, *Officer at Montford*, Et. Al.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:18-cv-00142-C

Before Wiener, Southwick, and Duncan, *Circuit Judges*.

Per Curiam:*

Following a physical altercation with prison guards, Plaintiff-Appellant Charles Epley filed a *pro se* civil rights complaint, raising a number of claims, including claims arising under the Americans with Disabilities Act

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-10781

("ADA") and § 504 of the Rehabilitation Act ("§ 504"). A Magistrate Judge recommended dismissing Epley's claims for failure to state a claim or on the basis of frivolity, pursuant to 28 U.S.C. § 1915(e)(2). The district court adopted the recommendation in full over Epley's objections and dismissed the case. The only claims on appeal are those related to allegations of disability discrimination. We conclude that Epley has stated a claim under the ADA and § 504, so we reverse the district court's dismissal of those claims and remand the case for further proceedings.

## I. BACKGROUND

Epley is a former inmate of the Texas Department of Criminal Justice ("TDCJ"), where he was incarcerated for twenty-eight years.[1] Epley suffers from Post-Traumatic Stress Disorder ("PTSD") and Traumatic Brain Injury ("TBI") stemming from a physical attack that occurred in 1994. He was granted a "single-cell medical restriction" because of these ailments and was housed alone for the majority of his time in prison. He was also granted a number of work-related limitations.

In 2016, Epley was transferred to the John Montford Unit, TDCJ's psychiatric prison. He was placed in a single cell on his arrival, but shortly thereafter was ordered to move to a cell already occupied by three other inmates. Epley contends this order "triggered severe PTSD symptoms which prevented [him] from entering the cell." When Epley asked to speak to a psychiatrist, he was ordered to remove his clothes and was placed in an empty room. He alleges that, at some point, prison guards sprayed a gaseous substance into the room, which left him "incapacitated and unable to think."

---

[1] Because this case involves review of a motion to dismiss, we accept all well-pleaded facts as true for the purposes of this discussion. *See Stringer v. Town of Jonesboro*, 986 F.3d 502, 505 n.1 (5th Cir. 2021).

No. 19-10781

He claims that the guards then entered the room and physically assaulted him, slamming his head to the ground, "crushing [his] body," causing "intense pain," and "breaking several ribs." Epley states that he was handcuffed and forced to return to the multi-occupancy cell. The following day, he was transported to a medical treatment facility in a prison bus—a 170 mile journey that, given his injuries from the day before, caused "excruciating pain" because he was handcuffed, unable to move, and kept "in a stress position the entire time."

After his release from prison, Epley filed a *pro se* civil rights complaint against thirty-nine defendants, including TDCJ staff members at the Montford Unit, the Robertson Unit, and the Lynaugh Unit, among others (collectively, "Defendants"). He asserted claims for, *inter alia*, excessive use of force, denial of medical care, retaliation, due process violations, conspiracy, assault, battery, and negligence. His case was referred to a Magistrate Judge, who denied his motion for the appointment of counsel but granted his motion to proceed *in forma pauperis*. Before Defendants were served, the Magistrate Judge issued a report and recommendation, suggesting that the district court dismiss all of Epley's claims for failure to state a claim or on the basis of frivolity, as required by 28 U.S.C. § 1915(e)(2).[2] The district court adopted that recommendation over Epley's objections and dismissed his case.

Epley timely appealed. In January 2021, he was granted leave to proceed *in forma pauperis* on appeal, but his motion for appointment of counsel was denied. Nevertheless, an attorney filed an appellate brief on his behalf, challenging only the dismissal of Epley's ADA and § 504 claims.

---

[2] The Magistrate Judge recommended that Epley's state law claims be dismissed without prejudice.

No. 19-10781

## II. STANDARD OF REVIEW

Section 1915(e)(2)(B) of the Prison Litigation Reform Act requires a district court to dismiss a case taken *in forma pauperis* "at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; [or] (ii) fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). This court reviews dismissals based on the failure to state a claim *de novo*, and those based on frivolity for abuse of discretion. *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998).

Here, the Magistrate Judge recommended dismissal of Epley's discrimination claims because he "ha[d] not pleaded facts supporting a claim under the ADA or [§ 504]." For this reason, we conclude that the Magistrate Judge recommended dismissing these claims for failure to state a claim and we review that decision *de novo*.

## III. ANALYSIS

Epley accused Defendants of discriminating against him on the basis of his disability in violation of the ADA and § 504 "due to the Texas prison system's culture of hostility toward prisoners with mental-disorders" and for Defendants' refusal to accommodate his disabilities. Specifically, he accused the Montford prison officials of (1) forcing him into a multi-occupancy cell despite his documented single-cell medical restriction, and (2) transporting him for medical treatment in a prison bus rather than a medical van. The Magistrate Judge concluded that dismissal of these claims was appropriate because (1) Epley did not qualify as disabled; (2) Epley could not establish evidence of intentional discrimination; and (3) these claims were merely restatements of those for denial of medical care.

A *prima facie* claim under the ADA requires a plaintiff to show:

"(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or

4

No. 19-10781

being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).[3]

## A. Qualifying Disability

Whether a plaintiff is disabled under the ADA is not a demanding question. *See* 42 U.S.C. § 12102(4)(A) ("The definition of disability . . . shall be construed in favor of broad coverage . . . ."). A qualifying disability under the ADA is either (1) "a physical or mental impairment that substantially limits one of more of the major life activities of the individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2).

The Act specifies that major life activities include "seeing, hearing, eating, sleeping, walking, . . . learning, reading, concentrating, thinking, communicating, and working," among others. 42 USC § 12102(2)(A). The ADA does not explain what "substantially limits" these activities, but regulations stress that this phrase must be broadly construed, because the relevant consideration is "whether public entities have complied with their obligations . . . not the extent to which an individual's impairment substantially limits a major life activity."[4] 28 C.F.R. § 35.108(d)(1). To that

---

[3] Because "t]he rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation Act," we apply the same analysis to both claims and refer only to Epley's ADA claims. *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005).

[4] This is a change from the original ADA. In 2008, Congress passed the ADA Amendments Act of 2008 to expressly abrogate several Supreme Court cases that had applied too strict an interpretation to the term "substantially limits." ADA AMENDMENTS ACT OF 2008, PL 110–325, September 25, 2008, 122 Stat 3553. Congress specifically explained that in *Toyota Motor Manufacturing, Kentucky, Inc. v.*

No. 19-10781

end, an impairment qualifies under the Act "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population," but it "does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 28 CFR § 35.108(d)(v).

Epley has alleged sufficient facts that, when considered in the light most favorable to him, demonstrate that his PTSD and TBI substantially limit his ability to think and sleep. In addition to describing the symptoms that these conditions cause—which include "migraine attacks, confusion during stressful situations, sleeping disturbances, . . . anxiety and panic attacks, vivid and distressing flashbacks and nightmares"—his factual allegations illustrate how these conditions affected his life at the time of the underlying incident. Epley alleges that when ordered to enter the multi-occupancy cell, he was stricken with PTSD symptoms so severe that he was unable to enter the space as the prison guards demanded. He also alleges that, following his removal from the cell, he was "overwhelmed with TBI/PTSD symptoms (e.g. confusion, fear, flashbacks, feelings of unreality)." Epley has clearly alleged that his mental condition prevented him from complying with the guards' orders in a manner that would not afflict most people in the general population. Furthermore, the applicable regulations make clear that PTSD will, in *most* cases, sufficiently limit a major life activity because, "[g]iven their inherent nature . . . it should easily be construed that . . . post-

---

*Williams*, the Supreme Court had placed too high a bar on qualifying disabilities under the ADA by requiring that the terms "substantially" and "major" "need to be interpreted to create a demanding standard" and that, to limit a major life activity, the impairment must "prevent or severely restrict the individual from doing activities that are of central importance to most people's daily lives." *Id.* (quoting 534 U.S. 184 (2002)).

traumatic stress disorder [and] traumatic brain injury . . . substantially limit[] brain function." 28 CFR § 35.108(d)(2), (d)(2)(k).

Additionally, Epley has sufficiently alleged that he had "a record of such an impairment." 42 U.S.C. § 12102(2). He asserts that, based on his conditions, TDCJ gave him a single-cell medical accommodation that had been in effect for many years prior to his transfer to Montford. He has also alleged that the Montford guards knew of his restriction because they (1) had instantaneous electronic access to his medical files, which reflected the restriction, and (2) placed him in a single cell for his first four days at the facility. The allegation that TDCJ had a record of his impairment and the accommodations that it warranted is further evidence that Epley sufficiently alleged that he was qualified under the ADA.

### B. Intentional Discrimination

An ADA plaintiff must also show that he was discriminated in some fashion "by reason of his disability." *Cadena v. El Paso Cty.*, 946 F.3d 717, 723-24 (5th Cir. 2020). The Magistrate Judge concluded that Epley had not satisfied this element because he had pleaded no facts illustrating that "Defendants intentionally treated him differently because of a disability." We disagree.

This prong can be satisfied with evidence that the defendant failed to make reasonable accommodations for a plaintiff's disability. *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021) (citing *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017)). To establish a claim for failure to provide a reasonable accommodation, "a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious." *Cadena*, 946 F.3d at 724. "To satisfy the knowledge

requirement, the entity must understand the limitations a plaintiff experienced as a result of his disability." *Valentine*, 2021 WL1153097, at *11.

Here, Epley alleged that Defendants denied him access to (1) safe housing by forcing him to enter a multi-occupancy cell and (2) safe transportation by transporting him in a prison bus, rather than a medical van. Specifically, Epley asserts that, even though his single-cell restriction had never been formally revoked, the Montford officials disregarded that restriction entirely when they forced him to spend the night in a multi-occupancy cell. As noted above, Epley also alleged that the Montford guards knew of that restriction, which was documented in his medical records. With respect to transportation, Epley alleged that the Montford officials knew he needed medical transportation because he arrived at the Montford Unit in a medical van five days earlier, and his psychological and physical problems had only increased since that time. We conclude that, at this early stage of the litigation, Epley has sufficiently pleaded that the Montford officials knew of his disabilities and the accommodation provided to him based on them, and yet denied him the benefit of safe prison housing and appropriate transportation by ignoring the restrictions entirely. The Magistrate Judge's emphasis on the lack of disability-based animus is irrelevant to this analysis.

## C. Denial of Medical Care

The Magistrate Judge reasoned that dismissal was additionally appropriate because Epley's ADA claims were mere restatements of his medical care claims. In two unpublished cases, we have indicated that an ADA claim cannot rest on the exact same facts as a claim of denial of medical care. *See Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *Walls v. Texas Dep't of Criminal Justice*, 270 F. App'x 358, 359 (5th Cir. 2008). But that is not what Epley has done. Epley's ADA claims are based on the denial of reasonable housing and transportation accommodations, neither

of which treat the underlying medical conditions that require their existence. Being housed in a single-occupancy cell might mitigate Epley's PTSD and TBI symptoms, but it in no way cures him or eliminates his ailments. As Epley explains, these restrictions merely "accommodate[] people with disabilities, allowing them equal access to a program or service—here, safe housing—despite their disabilities." This independent basis given for dismissal was erroneous.

## IV. CONCLUSION

We REVERSE the district court with respect to Epley's ADA and § 504 claims, and REMAND for further proceedings.