# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 7, 2021

Lyle W. Cayce
Clerk

No. 20-11257

Justin Schrader,

*Plaintiff—Appellant*,

*versus*

Julie Ruggles,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-160

Before King, Dennis, and Ho, *Circuit Judges*.

Per Curiam:*

Justin Schrader arrived at the Erath County Jail with a broken ankle. After he was released, he sued various jail administrators and medical staff, as well as Erath County, alleging deliberate indifference for their failure to adequately treat his injury. The district court granted the defendants' motion for summary judgment and dismissed Schrader's suit. Schrader

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-11257

appeals the district court's grant of summary judgment for only one defendant—a nurse named Julie Ruggles. Because Schrader fails to establish a sufficiently serious deprivation, we affirm.

## I.

Justin Schrader was pulled over for street racing and evading arrest. After the officer who initiated the stop handcuffed Schrader, he performed a leg sweep, causing Schrader to fall to the ground and break his ankle. Schrader then was taken to a hospital, where he was seen immediately and treated. The doctor that treated him gave him a splint, advised him to keep his left ankle elevated and not to put any weight on it, gave him some crutches to use, instructed him to ice his ankle for twenty minutes every two hours for the next forty-eight hours, and prescribed "Tramadol 100mg every 6 [hours] as needed for pain." At the hospital, he was given a dose of Tramadol, which is an opioid-based painkiller. The doctor provided all this information to the officer accompanying Schrader in the form of an Inmate Clearance Report, which cleared Schrader for incarceration. In addition, the officer was provided with an After Visit Summary, which included instructions for care and instructed that "Tylenol, [A]dvil, or [T]ramadol" be used "as needed for pain."

After his hospital visit, Schrader was taken to Erath County Jail where he was booked at 2:10 a.m. on January 30, 2018. At the jail, he was put in a holding cell, where he was housed, by himself, for two days. He was given ice for his ankle, although he does not recall how frequently. He was not allowed to use crutches in the holding cell. The jail staff explained to him that this was because the cell was small enough that he did not need to move far and also because the floor was slick, creating a risk that he could slip and exacerbate his injuries. Instead, multiple jail employees stated that Schrader was given a walker with a seat on it. In an affidavit submitted after those

employees' depositions, Schrader contends that he was never provided a walker. Additionally, jail employees recalled that he used a wheelchair at some point. Schrader does not remember whether he used a wheelchair or not.

On each of the two days he was in the holding cell—January 30th and 31st—Schrader was given two doses of Tramadol: one in the morning and one in the evening.

The jail had a medical staff. Appellee Julie Ruggles was a nurse who worked at the jail about thirty hours a week. Ruggles was supervised by Laurie Srubar, the jail's nurse practitioner and primary care provider. While Ruggles was in charge of dispensing medication, she had no authority to prescribe medications—that was Srubar's job.

Records indicate that Ruggles worked from 7:30 a.m. to 1:15 p.m. on January 30th, which means she started her shift a few hours after Schrader was booked. Ruggles never examined or spoke with Schrader on January 30th and did not work on the 31st.

On February 1st, two days after he arrived at the jail, Schrader was moved to a medical cell. He was given crutches to walk there, but they were taken away once he got to his cell. In that cell, he recalls being given Tramadol "one or two more times," as well as ice for his ankle (though he does not remember how often). There was also an intercom that he could use without having to walk. He says that the jailers answered the intercom the majority of the time.

Ruggles worked from 8:00 a.m. to 1:30 p.m. on February 1st. At some point on that day, Srubar made the decision to switch Schrader from Tramadol to ibuprofen. Because Tramadol was no longer approved for Schrader, neither Ruggles nor any of the other nurses that treated him were allowed to dispense Tramadol. So when he asked for Tramadol, he did not

receive it.  He recalls asking for pain medication four or five times a day and that he received ibuprofen as a result.  He does not remember how many times he received it.

Also on that day, Ruggles attempted to examine Schrader.  She says that it was her understanding that he refused to come to the medical unit.  One of the other medical staff recalled asking Schrader "Are you sure you don't want to see the nurse?" to which he replied, "She's not going to give me the [T]ramadol anyway, so no."  Schrader contends that he did not refuse to come to the medical unit.  During his entire time in jail, he never asked to go to the emergency room, see a doctor or a nurse, and did not file any grievances.

The next day, February 2nd, Schrader was taken to a doctor's appointment, where a specialist told him that he needed surgery.  He was given crutches to move to and from this visit.  Surgery was then scheduled for February 9th.  Jail administrators contacted the county judge and petitioned for Schrader to be released on a personal recognizance bond so that he could recuperate from surgery at home rather than at jail.  The county judge granted that request, and on February 8th Schrader was released.  His surgery went as scheduled and he experienced no complications.

Schrader then sued Erath County, various jail personnel and medical staff, including Ruggles, alleging deliberate indifference under 42 U.S.C. § 1983.  After discovery, the district court granted the defendants' motion for summary judgment.  Schrader appeals only his claim against Ruggles.

## II.

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court."  *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015).  "As a pretrial detainee contesting the conditions of [his] confinement, [Schrader]'s § 1983 claim invokes the

protections of the Fourteenth Amendment. The standard is the same as that for a prisoner under the Eighth Amendment." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (citations omitted).

Deliberate indifference has two elements. "First, the deprivation alleged must be, objectively, sufficiently serious," such that the official's actions "result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). Second, the "prison official must have a 'sufficiently culpable state of mind,'" i.e., she must act with "deliberate indifference" to inmate health and safety. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A prison official acts with the requisite mental state when she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Id.* at 837.

"Deliberate indifference is an extremely high standard to meet," *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001), and upon a thorough review of the record, we agree with the district court that Schrader has failed to meet that standard here.

Schrader argues that Ruggles was deliberately indifferent to a serious risk of harm because she "did literally nothing to assess him, assist him, care for him, monitor him or even ensure that [the emergency room doctor's] instructions were followed."

Schrader fails to establish a sufficiently serious deprivation. He does not dispute that he was given ice, pain medication, his own cell, an intercom to communicate with jail staff, and crutches to use when he moved cells and when he traveled to his appointment. That Ruggles did not personally provide this care—because she worked only five half-days out of the ten days

that Schrader was incarcerated—does not somehow establish that Ruggles's "actions result[ed] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). And while Schrader might disagree with Srubar's decision to switch him from Tramadol to ibuprofen, that decision was entirely consistent with the doctor's instructions to take Tramadol "as needed." That Schrader disagrees with how much of that opioid-based drug was needed does not establish a sufficiently serious deprivation—especially since he was given ibuprofen as a substitute. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (holding that "a prisoner's disagreement with his medical treatment, absent exceptional circumstances" does not constitute deliberate indifference). More importantly, Ruggles had no power to override her supervisor's decision.

Nor does Schrader explain how the fact that Ruggles did not evaluate him on January 30th—just hours after he was treated by a doctor and cleared for incarceration—caused him substantial harm. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) ("The mere delay of medical care can also constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm.'") (alteration in original) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Schrader saw a specialist on February 2nd and had surgery the next week, which by all accounts went well.

Finally, Schrader does not put forth any evidence that Ruggles was subjectively aware of a substantial risk of serious harm. Even if he did not refuse to be seen by Ruggles on February 1st, Schrader does not dispute that a jail administrator told Ruggles that Schrader did not want to be seen. Nor does Schrader provide any evidence that Ruggles was aware of any deficiencies in his care.

No. 20-11257

Accordingly, we affirm the judgment of the district court.