# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 3, 2023

Lyle W. Cayce
Clerk

No. 22-50305

Anisha H. Ituah, *by her Guardian*, Angela McKay, *on behalf of herself and those similarly situated*,

*Plaintiff—Appellant*,

*versus*

Austin State Hospital; Catherine Nottebart; Stacey Thompson,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-11

Before Graves, Ho, and Duncan, *Circuit Judges*.

Per Curiam:*

Anish Ituah, an intellectually disabled woman, claimed she was sexually assaulted by a geriatric male patient, A.M., in the late evening or early morning of January 7–8, 2016, while in her room at the Austin State Hospital ("ASH"), where she was involuntarily committed. A report by the Texas Department of Family and Protective Services concluded A.M.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

mistakenly entered Ituah's room in his wheelchair—believing the room to be his and mistaking Ituah for his wife—climbed onto the bed, sat on Ituah's legs while remaining clothed, but then left when Ituah cried out. Ituah sued ASH and two hospital superintendents in federal court under various legal theories, including 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"), and also sought class certification. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

Following extensive pretrial litigation and discovery, the district court denied class certification, leaving only two categories of claims: (1) Ituah's ADA/RA claims against ASH, and (2) Ituah's § 1983 claims against the superintendents. After summary judgment motions were filed by all defendants, the district court adopted the magistrate judge's recommendation to dismiss all of Ituah's claims with prejudice. Ituah now appeals only the summary judgment dismissal of her ADA/RA claims, which we review *de novo*. *See James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864 (5th Cir. 2022); Fed. R. Civ. P. 56(a).

Ituah presses three ADA/RA[1] theories on appeal. First, she argues ASH is liable for harassment by a fellow patient under our court's decision in *Estate of Lance v. Lewisville Independent School District*, 743 F.3d 982 (5th Cir. 2014). Among other things, *Lance* explained that a plaintiff must show she was harassed based on her disability. *Id.* at 996. Here, the district court concluded Ituah failed to show this element, and her appellate brief states that she "is not claiming that she was assaulted *because* she has a disability." Ituah reiterated this concession at oral argument. Accordingly, we affirm the summary judgment on this ground.

Second, Ituah claims ASH discriminated against her by failing to follow the hospital's internal policies concerning sexual assault claims. But a

---

[1] Cases interpreting the ADA are generally applicable to the RA, and vice versa. *See, e.g.*, *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

discrimination claim under the ADA/RA requires showing discrimination based on the plaintiff's disability. *See, e.g.*, *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (requiring "that such exclusion, denial of benefits, or discrimination is by reason of [plaintiff's] disability" (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004))). Ituah points to no such evidence. Even viewed most favorably to her, Ituah's evidence shows that hospital staff neglected to follow all relevant policies, such as by failing to order a "rape kit." Perhaps this is evidence of negligence, but it is not evidence of discrimination based on Ituah's disability. We therefore affirm the summary judgment on this ground as well.

Finally, Ituah presses a failure-to-accommodate claim. That requires showing, *inter alia*, that ASH "failed to make 'reasonable accommodations'" for Ituah's known disability. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (citation omitted). Ituah did not raise a genuine dispute on this issue, however. For example, her expert opined that poor "sightlines" prevented nurses from observing the door to Ituah's room. But unrebutted evidence showed "sightlines" played no role in patient monitoring; instead, ASH staff is trained to personally and directly monitor patient areas at regular intervals. Ituah's expert also suggested patient doors should have been lockable from the inside. But no evidence suggested this would have been a reasonable measure. To the contrary, ASH's unrebutted evidence detailed its policies and procedures designed to protect patients and also explained why internal door locks would have been "unwise and unsafe" for psychiatric patients. Accordingly, we affirm the summary judgment on this ground as well.

AFFIRMED.